IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 34888**

| | | |
|---|---|---|
| MARK VAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Boise, June 2009 Term |
| | ) | |
| PORTNEUF MEDICAL CENTER, PAT | ) | 2009 Opinion No. 92 |
| HERMANSON, Hospital Administrator, | ) | |
| PAM HUMPHREY, EMS Program Director, | ) | Filed: July 7, 2009 |
| GARY ALZOLA, Director of Operations, | ) | |
| RON FERGIE, Chief Pilot/Safety Officer, | ) | Stephen W. Kenyon, Clerk |
| BARRY NIELSON, Pilot, and DOES I-X, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Honorable Peter D. McDermott, District Judge.

The summary judgment order of the district court is <u>affirmed</u> in part, <u>vacated</u> in part, and the case is <u>remanded</u>.

Nick L. Nielson, Pocatello, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for respondents. Paul D. McFarlane argued.

————————————

J. JONES, Justice

Mark Van appeals the district court's grant of summary judgment on his claims for wrongful termination. We affirm the district court's decision with respect to Van's contract claims, vacate with regard to the Whistleblower Act claim, and remand for further proceedings on the latter claim.

**I.**

Portneuf Medical Center (PMC) hired Mark Van in 1986 as a mechanic for its Life Flight Program. In 1997 he became the director of maintenance for Life Flight and was responsible for the maintenance of PMC's Life Flight helicopter. In 2001, the Life Flight helicopter crashed while attempting a rescue mission. Van witnessed the crash and rushed to the scene to rescue the

pilot. The National Transportation Safety Board ultimately determined that the crash was caused by pilot error and not maintenance issues. Nevertheless, Van felt that the media and the public blamed the crash on the maintenance department and he became protective of its reputation.

After the helicopter crash, Van began reporting numerous perceived violations of state and federal law in what he felt was a defense of the maintenance department's image. Among other things, Van reported his beliefs that pilots had: accumulated too much time on duty; flown the helicopter too low; taken off with ice on the helicopter's rotor blades; and overflown the helicopter by exceeding inspection time intervals. Additionally, while PMC was negotiating the purchase of a new helicopter, Van was asked to review the proposed maintenance contract (the COMP contract) with the vendor, Agusta Helicopter, and recommend what aircraft would be best suited for Life Flight. After reviewing the COMP contract, Van notified PMC he thought there were several loopholes by which Agusta could escape its maintenance responsibilities and he therefore asserted that entering into the COMP contract amounted to a waste of public funds.

Several meetings were scheduled to address the mounting concerns expressed by Van. Shortly after a meeting in April 2005, Van was terminated. PMC asserts that its decision to terminate Van was due to his inability to maintain positive interpersonal relations with his colleagues and to foster a positive team environment. In response, Van filed this lawsuit and alleged in count one that he had been wrongfully terminated in violation of Idaho's Whistleblower Act. I.C. §§ 6-2101 to 2109. In count two Van alleged breach of his employment contract and of the implied covenant of good faith and fair dealing.

During the discovery process Van requested, and PMC refused to provide, a copy of the COMP contract between PMC and Agusta. PMC moved for a protective order and, after Van failed to object, the district court granted PMC's motion. Six months later Van moved for reconsideration, arguing that the COMP contract was relevant, but the district court denied that motion. Van appeals that determination to this Court.

PMC moved for summary judgment against Van arguing that Van (1) did not comply with the notice requirements of the Idaho Tort Claims Act (ITCA), (2) failed to establish a *prima facie* case of wrongful termination under Idaho's Whistleblower Act, and (3) failed to establish a *prima facie* case of breach of employment contract. The district court granted PMC's motion and Van appeals that decision to this Court.

## II.

2

## A. Standard of Review

When reviewing an order for summary judgment, the standard of review used by this Court is the same standard used by the district court in ruling on the motion. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. *Finholt v. Cresto*, 143 Idaho 894, 896, 155 P.3d 695, 697 (2007).

This Court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. *Id.* If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. *Id.* However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. *Id.* at 896-97, 155 P.3d at 697-98. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. *Id.* at 897, 155 P.3d at 698. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 87, 996 P.2d 303, 306 (2000).

## B. The District Court Erred in Holding that Van's Whistleblower Act Claim was Subject to the Idaho Tort Claims Act

In its memorandum decision and order, the district court, noting that PMC "is a governmental entity or political subdivision covered under the ITCA," found that Van's "wrongful termination claims, including his whistleblower claims, were covered under the [ITCA] since the Whistleblower Act created an action separate from the public policy exception to the at-will employment doctrine and is not exempt from the notice requirements of the ITCA." The district court emphasized that it deemed liability under the Whistleblower Act to be a separate cause of action from the wrongful termination cause of action predicated on the alleged breach of Van's at-will employment contract. It did not, however, explain why it deemed Van's Whistleblower Act claim to be an action covered by the ITCA.

3

Van argues the district court erred by dismissing his whistleblower claim on the basis that he had not complied with the notice requirements of the ITCA. Van insists that his whistleblower claim is a contract claim and not a tort claim, and therefore is not subject to the ITCA. PMC asserts the district court correctly recognized that Van's whistleblower claim is governed by the ITCA and, therefore, Van's undisputed failure to comply with the notice provisions of the ITCA defeats his claim.[1]

The ITCA, found at Idaho Code sections 6-901 through -929, was enacted in 1971. The Act abrogates sovereign immunity and renders a governmental entity liable for damages arising out of its negligent acts or omissions. *Lawton v. City of Pocatello*, 126 Idaho 454, 458, 886 P.2d 330, 334 (1994). Generally, the ITCA makes governmental entities subject to liability for money damages under specified circumstances.[2] *Athay v. Stacey*, 146 Idaho 407, 419, 196 P.3d 325, 337 (2008). In order to bring a lawsuit against a governmental entity under the ITCA, a plaintiff must comply with the ITCA's notice requirements.[3] *Smith v. City of Preston*, 99 Idaho 618, 620, 586 P.2d 1062, 1064 (1978). Pursuant to the ITCA:

> All claims against a political subdivision [subdivision] arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

I.C. § 6-906. Not all actions are covered by the ITCA. Instead, the ITCA covers any "claim," which it defines as "any written demand to recover money damages from a governmental entity

---

[1] PMC bases its argument in large part on *Smith v. Mitton*, 140 Idaho 893, 104 P.3d 367 (2004), which involved claims under the Whistleblower Act. However, that case is not controlling because it did not address the issue of whether Whistleblower Act claims are covered by the ITCA, thereby requiring compliance with its notice provisions. *Id.*

[2] The ITCA nonetheless preserves the traditional rule of immunity in certain specified situations, none of which are at issue in this appeal. *Lawton*, 126 Idaho at 458, 886 P.2d at 334.

[3] The primary function of notice under the ITCA is to "put the governmental entity on notice that a claim against it is being prosecuted," and notice serving that function is sufficient unless the governmental entity is "misled to its injury." *Huff v. Uhl*, 103 Idaho 274, 276, 647 P.2d 730, 732 (1982) (quoting *Smith v. City of Preston*, 99 Idaho 618, 621-22, 586 P.2d 1062, 1066-67 (1978)). Further, the purpose of the statute is to "(1) save needless expense and litigation by providing an opportunity for amicable resolution of the differences between parties, (2) allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, if any, and (3) allow the state to prepare defenses." *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 486, 887 P.2d 29, 31 (1994) (quoting *Pounds v. Denison*, 120 Idaho 425, 426-27, 816 P.2d 982, 983-84 (1991)).

or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." I.C. § 6-902(7).

It is undisputed that Van did not give adequate notice of his claims under the ITCA. However, such notice is only required if the claims he asserts are covered by the ITCA. Van's complaint alleged two causes of action: wrongful termination of employment in violation of the Whistleblower Act and breach of an at-will employment contract, including breach of the "implied contract of good faith and fair dealing." Clearly, the second claim – involving contract claims – is not subject to the notice requirements of the ITCA. *See Hummer v. Evans*, 129 Idaho 274, 280, 923 P.2d 981, 987 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 203, 899 P.2d 411, 416 (1995) ("Because Chubbuck's claim is based on Pocatello's breach of a contractual obligation, rather than negligent or wrongful conduct, the Idaho Tort Claims Act is inapplicable"); *County of Kootenai v. W. Cas. & Sur. Co.*, 113 Idaho 908, 916, 750 P.2d 87, 95 (1988) ("Since this action is based upon rights held and responsibilities due under an insurance contract, it is unnecessary to pursue the issue of the applicability of the Idaho Tort Claims Act."). Therefore, our decision on this question will not affect count two. The remaining question is whether count one, a claim for wrongful termination under the Whistleblower Act is covered by the ITCA.

Idaho's Whistleblower Act was enacted in 1994 and "seeks to 'protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation.'" *See Mallonee v. State*, 139 Idaho 615, 619, 84 P.3d 551, 555 (2004). An employee's cause of action under the Whistleblower Act is defined in Idaho Code section 6-2105(4):

> To prevail in an action brought under the authority of this section, the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code.

I.C. § 6-2105(4); *see also Curlee v. Kootenai County Fire & Rescue*, 2008 Opinion No. 112 (2008). We hold that a whistleblower claim is an action based on a specific statute and therefore it is unnecessary to classify a Whistleblower Act claim as either a contract or tort. Although the

5

district court focused on the fact that the statute establishes "an action separate from" the usual breach of employment contract claim, the statutory nature of the cause of action does not automatically render it subject to the ITCA. In fact, we hold the opposite to be true: the whistleblower claim is purely a statutory remedy against governmental employers and there is no reason to assume that the Legislature intended those alleging claims under the statute to have to comply with the notice provision of the ITCA where the Legislature did not specifically require it. In fact, the Legislature has acknowledged statutory claims as a separate category of claims by setting a separate statute of limitations, Idaho Code section 5-218(1),[4] as opposed to contract actions, Idaho Code sections 5-216 & 17, and claims sounding in tort, Idaho Code section 5-219(4). Therefore, the district court erred in holding that compliance with the notice provision in Idaho Code section 6-906 was a prerequisite to bringing suit under the Whistleblower Act.

## C. The District Court Erred in Finding that Van Failed to Establish a *Prima Facie* Case for Retaliatory Discharge Under the Whistleblower Act

Under Idaho's Whistleblower Act, a *prima facie* case for retaliatory discharge requires Van to show: (1) he was an "employee" who engaged or intended to engage in protected activity; (2) his "employer" took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action. *Curlee*, 2008 Op. No. 112 at 8. The district court held that Van failed to demonstrate an issue of material fact regarding two elements: (1) that he engaged in a protected activity; and (2) that Van's termination was caused by his engagement in the protected activity. These two issues will be considered in turn.

### 1. Van Demonstrated Issues of Material Fact Regarding Whether He Engaged in Protected Activities

PMC's primary arguments are that nothing Van reported involved a violation or suspected violation of laws, rules, or regulations and that PMC itself cured or investigated any potential violations in response to Van's reports. Van contends that his complaints did involve violations of laws, rules, or regulations and that PMC's actions prompted by his reports of violations or waste are irrelevant to whether or not the Whistleblower Act was violated.

Protected activities under the Whistleblower Act are described as follows:

---

[4] This is the general limitations provision for liabilities created by statute. It applies unless the Legislature has provided a specific limitations period for a specific statutory liability, as it has with the Whistleblower Act. Idaho Code section 6-2105(2) provides a limitations period of 180 days from the occurrence of the alleged violation.

> (1)(a) An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.

I.C. § 6-2104.

Van asserts that his protected activities include, among other things, communications regarding: PMC's failure to furnish each of his employees a place of employment free from hazards which are causing or likely to cause serious injury, death, or physical harm to employees;[5] pilots taking off in aircraft with frost, ice, or snow on any rotor blade;[6] pilots flying too low;[7] and pilots flying the helicopter in unairworthy conditions.[8]

PMC admits that two suspected violations do, in fact, implicate federal regulations.[9] Nonetheless, PMC argues that because the incidents reported by Van were investigated and resolved, Van's conduct in reporting the suspected violations does not qualify as a protected activity. This reasoning is contrary to the Whistleblower Act – which applies regardless of any action or inaction on the employer's part after the protected communication is made. As to the other communications that Van insists were protected activity, although many of them involve suspected violations rather than confirmed violations, many of them implicate laws, rules and regulations and do qualify as protected activities under the Whistleblower Act.

Even the district court in this case recognized that some of Van's reports involved laws, rules and regulations but nonetheless concluded that because they occurred months or years before Van's termination, those communications could not be protected activities. It appears the district court misunderstood the law, and ruled that suspected violations had to be confirmed in order to constitute protected activity; and that any reported violations later cured removed the original communication from the protection of the Whistleblower Act. This interpretation of the

---

[5] *See* 29 U.S.C. § 654(a). Van bases this on pilots who flew too many hours and therefore, in his estimation, endangered other crew members.

[6] 14 C.F.R. § 135.227(a).

[7] 14 C.F.R. §§ 91.13 & 91.119(a)-(d).

[8] 14 C.F.R. § 91.7.

[9] In its brief before this Court, PMC states: "The only real safety issues involved Van's allegation that [a pilot] took off with ice on the rotor blades . . . , and his report that two pilots had overflown airworthiness directives."

7

law was incorrect, and the district court erred in granting summary judgment to PMC on the basis that Van had not engaged in protected activity.

The district court was correct, however, regarding Van's communications about the COMP contract. Van contends that the district court erred by holding that he "provided no evidence that the Life Flight helicopter actually missed a flight or that PMC lost revenue because the helicopter was unable to fly." Although Van insists that the COMP contract involved government waste, his focus was on *potential* future waste, rather than past or present waste.[10] This distinction is important because the relevant statute, Idaho Code section 6-2104(1)(a) speaks of the "existence" of any waste of public funds, meaning an existing or present waste, not a potential future waste. To hold that the Whistleblower Act protects employee communications regarding potential waste that *may* occur in the future based on an employee's subjective beliefs might subject any government contract to allegations of potential future waste of funds. Van's allegations regarding the COMP contract do not constitute a protected activity under the Act.

### 2. Issues of Material Fact Remain Regarding Causation

As a general rule, causation is an issue of fact for the jury and only rarely can the issue be determined on a motion for summary judgment. *See Curlee*, 2008 Op. No. 112 at 7 ("If Curlee presented a prima facie case of retaliatory discharge, the district court was not free to accept as true the employer's testimony that she was fired for some other legitimate reason."). Here, Van was fired – purportedly due to his distrust of the pilots and inability to accept solutions other than his own – after a series of complaints and reports of occurrences implicating federal law, rules, and regulations. Drawing all inferences in favor of Van, a reasonable person could conclude that Van was terminated for his insistence on reporting violations and suspected violations over a period of time. Similar to this Court's holding in *Curlee*, the district court erred by simply accepting PMC's proffered reasons for firing Van once he had demonstrated a *prima facie* case of retaliatory discharge; instead questions of material fact remained to be tried by the jury. This is true even though, as PMC points out, a number of Van's reports occurred years before his termination. The district court erred in granting summary judgment on this basis.

---

[10] In his opening brief, Van asserts that his claims of waste involving the COMP contract "were that PMC was paying for a maintenance service up-front that was not secure, and that assets of the hospital were *at risk*. Agusta *could* legally refuse to provide services PMC was paying for due to untrained mechanics working on the aircraft and that some parts costing over $100 were not listed in the addendum to the COMP contract." (emphasis added). His concerns focused on the potential for future waste resulting from "loopholes" he perceived in the contract.

8

## D. The District Court Properly Denied Van's Motion for Reconsideration

Van contends that the district court erred in denying his motion for reconsideration of the court's protective order regarding the COMP contract because it was relevant to Van's claims of waste. PMC asserts that the COMP contract is irrelevant because Van's concerns regarding potential public waste have proven unfounded. PMC also points out that when it first filed its motion for a protective order, Van failed to object. It was not until six months later that Van filed his motion for reconsideration.

PMC's motion for a protective order – which included Van's Request for Production of the COMP contract – was granted on March 16, 2007. Van did not oppose the motion, and the district court entered the order on the grounds that the requests were duplicative, burdensome, and irrelevant. On September 10, 2007, Van moved the district court to reconsider its order protecting the COMP contract from discovery. Van argued that the production of the COMP contract was not burdensome because the request was specific and limited in scope, it was not duplicative because its contents had not been discovered, and it was relevant because it related to his whistleblower claim that the COMP contract was a waste of taxpayer money.

The district court heard both the motion for summary judgment and the motion for reconsideration at the same hearing, and dealt with both motions in the same decision. After discussing the issues presented in PMC's motion for summary judgment, the district court stated: "This Court also DENIES [Van's] Motion for Reconsideration since [PMC] prevailed on the summary judgment motion, and [Van's] concerns regarding the COMP contract were unfounded." In its earlier discussion of Van's argument that PMC's failure to incorporate his recommendations into the COMP contract resulted in waste, the district court found that Van had presented no evidence demonstrating that the COMP contract had resulted in any actual waste. Therefore, the district court ruled that Van had failed to show a *prima facie* case on this part of his whistleblower claim.

A decision of whether to grant or deny a motion for reconsideration made pursuant to Idaho Rule of Civil Procedure 11(a)(2)(B) is left to the sound discretion of the trial court. *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 212, 177 P.3d 955, 959 (2008). In reviewing whether a trial court abused its discretion, this Court applies a three-part test, which asks whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of that discretion; and (3) reached its decision

by an exercise of reason. *Id.* Further, whether or not to grant a motion for a protective order is discretionary. *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 104, 996 P.2d 798, 804 (2000).

While the district court did not expressly state it recognized that its decision on Van's motion for reconsideration was discretionary, the court nonetheless perceived the issue as such. Likewise, the district court acted within the outer boundaries of its discretion and reached its decision by an exercise of reason. Although the court based its decision on the substantive law – namely, whether or not Van's assertions regarding the COMP contract constituted a protected activity under the Whistleblower Act – the court's ruling effectively concluded that the COMP contract was irrelevant because it was not related to a protected activity.

Production of the COMP contract would not establish facts proving that the COMP contract resulted in waste. The discussion above explains why Van's report regarding the COMP contract is not a protected activity under the Whistleblower Act and therefore the issue is irrelevant and the district court properly denied Van's motion for reconsideration.

### E. The District Court Properly Dismissed Van's Claims for Breach of Employment Contract and Breach of the Covenant of Good Faith and Fair Dealing

### 1. The District Court Properly Granted PMC Summary Judgment on Van's Breach of Employment Contract Claim

Van asserts that he demonstrated the existence of an issue of material fact by presenting evidence that he had been fired in contravention of the Whistleblower Act, which establishes the public policy upon which he bases his claim for breach of at-will employment contract.

Generally, an employer may discharge an at-will employee at any time for any reason without incurring liability. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 240, 108 P.3d 380, 387 (2005). However, the right to discharge an at-will employee is limited by considerations of public policy, such as when the motivation for the firing contravenes public policy. *Mallonee*, 139 Idaho at 621, 84 P.3d at 557. The determination of what constitutes public policy sufficient to protect an at-will employee from termination is a question of law. *Id.* The public policy exception to the employment at-will doctrine has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights and privileges. *Id.* An employer may not discharge an at-will employee without cause when the discharge would violate public policy. *Id.* Once the court defines the public policy, the question of whether the public policy was violated is one for the jury. *Smith v. Mitton*, 140 Idaho

10

893, 900, 104 P.3d 367, 374 (2004).

Van insists that, in addition to giving rise to his Whistleblower Act claim, termination in violation of the Whistleblower Act also gives rise to a breach of contract claim by way of the public policy exception to the at-will doctrine. However, when the Legislature enacted the Whistleblower Act, the resulting statutory cause of action displaced the common law cause of action for breach of an at-will employment contract premised on the protected activities outlined in the Act. *See* I.C. § 6-2105(4) (outlining what constitutes a protected activity); 82 AM. JUR. 2D *Wrongful Discharge* § 62 (2009) (stating that when "the relevant public policy is contained in a statute and the statute provides a remedy, the [common law cause of action] of wrongful discharge is not available."). Idaho's Whistleblower Act provides for specific remedies for violations of the Act, including civil fines and attorney fees. *See* I.C. §§ 6-2106 & 2107. Under the Act a court is authorized to "order any or all of the following":

> (1) An injunction to restrain continued violation of the provisions of [the] act;
> (2) The reinstatement of the employee to the same position held before the adverse action, or to an equivalent position;
> (3) The reinstatement of full fringe benefits and seniority rights;
> (4) The compensation for lost wages, benefits and other remuneration;
> (5) The payment by the employer of reasonable costs and attorneys' fees;
> (6) An assessment of a civil fine of not more than five hundred dollars ($500)

I.C § 6-2106. Clearly, the Act itself authorizes specific remedies, and therefore its provisions cannot also be used to establish the public policy upon which a breach of at-will employment contract claim is based. To hold otherwise would allow plaintiffs to recover twice for the same underlying facts. The district court properly granted summary judgment on Van's breach of employment contract claim.

**2. The District Court Properly Granted PMC's Motion for Summary Judgment on Van's Breach of the Covenant of Good Faith and Fair Dealing Claim**

Van argues that the district court erred by failing to address his breach of the covenant of good faith and fair dealing claim. He insists PMC did not act in good faith toward him because its employees responded to his complaints with disdain and treated him differently than they treated the pilots. PMC argues that the district court properly dismissed Van's breach of covenant claim because Van provided no evidence to support the claim.

A covenant of good faith and fair dealing is implied in all employment agreements – including at-will employment relationships. *Jenkins*, 141 Idaho at 242-43, 108 P.3d at 389-90.

11

The covenant requires the parties to perform, in good faith, the obligations contained in their agreement, and a violation occurs when either party violates, qualifies, or significantly impairs any benefit or right of the other party under the contract – whether express or implied. *Id.* at 243, 108 P.3d at 390. However, the covenant does not create a duty for the employer to terminate the at-will employee only for good cause. *Id.* The covenant only arises in connection with the terms agreed to by the parties, and does not create new duties that are not inherent in the employment agreement. *Jones v. Micron Tech., Inc.*, 129 Idaho 241, 247, 923 P.2d 486, 492 (Ct. App. 1996).

In this case, the only alleged wrongful conduct was Van's termination. Because Van's employment contract was at-will and no agreement was made regarding termination only for cause, Van has failed to allege facts sufficient to create an issue of material fact. To the extent Van argues that PMC's employees treated him with disdain, or ignored his complaints of alleged violations – such conduct does not involve any term of his employment agreement with PMC. PMC did not agree to provide an atmosphere where no employee ever treated Van in a less than ideal manner. Therefore, the district court properly granted PMC summary judgment on the issue of breach of the covenant of good faith and fair dealing.

## III.

The district court's decision is affirmed with regard to Van's contract claims, vacated with regard to his Whistleblower Act claim, and remanded for further proceedings on the Whistleblower Act claim. The district court's award of attorney fees and costs is vacated. We award no costs or attorney fees on appeal. The district court may award costs and fees incurred with respect to the appeal to the party that prevails on remand.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.

12