# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35053

CITIBANK (SOUTH DAKOTA), N.A., )
)
    Plaintiff-Respondent, )
)
vs. )
)
MIRIAM G. CARROLL, )
)
    Defendant-Appellant. )
)
_____ )

Boise, November 2009 Term

2009 Opinion No. 139

Filed: November 25, 2009

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Hon. John H. Bradbury, District Judge.

The district court's summary judgment order is affirmed.

Miriam G. Carroll, Kamiah, appellant pro se.

Stroock & Stroock & Lavan LLP, Los Angeles, California, and Hawley Troxell Ennis & Hawley LLP, Boise, for respondent. Sheila R. Schwager argued.

_____

J. JONES, Justice.

This is an appeal from the district court's grant of summary judgment against Miriam Carroll in Citibank (South Dakota), N.A.'s collection action. We affirm.

## I.
### Factual and Procedural Summary

Carroll requested and received a credit card from Citibank in 1999, and she regularly used the card until December 2004. Carroll had a zero balance on her account as of September 9, 2003. However, between December 22, 2003, and February 12, 2004, Carroll transferred balances in the amount of $24,800 from other accounts to her Citibank account. Carroll continued to make the minimum payment on her account during this time and immediately after the balance transfers. However, on November 29, 2004, Carroll made her last minimum payment

1

on the account, making no payments after that date, despite the fact that her account had a balance due of $20,884.30.

On January 3, 2005, Citibank received a letter from Carroll that questioned the accuracy of her account balance but did not allege any specific charge that was in dispute.[1] Citibank responded by letter on January 7, 2005, reminding Carroll that it had engaged in a lawful extension of credit under federal and state law, Carroll was obligated to pay her account balance according to the terms of the credit card agreement, there was a balance due and owing, and the account was closed as the result of her default. Carroll never responded to Citibank's letter and made no further payments on her account.

As a result of Carroll's nonpayment, Citibank filed suit against her seeking recovery of the account balance, plus interest and attorney fees. Carroll answered pro se, asserting the existence of billing errors in the account and denying that she was in default. Carroll also asserted a number of affirmative defenses, including violations of the Truth in Lending Act (TILA) and the Fair Credit Reporting Act (FCRA), and negligence per se. Citibank filed a motion for summary judgment, seeking a monetary judgment against Carroll on the account.

In opposition to Citibank's motion for summary judgment, Carroll abandoned her billing error and the TILA/FCRA arguments, instead focusing on the fact that Citibank was not licensed under the Idaho Collection Agency Act (ICAA) and that it lacked standing, i.e., that it had engaged in asset securitization, assigning the receivables from Carroll's account to a trust in order to sell account-backed securities, and no longer owned the account. Citibank argued that, despite the fact that it had assigned the receivables from Carroll's account to a trust, it was still the owner of the account and contractually entitled to collect the account balance. Citibank also argued that, because it was a national bank, it was governed by federal law and, thus, not required to register under the ICAA. After voluminous briefing and multiple hearings and

---

[1] The letter Carroll sent to Citibank was based on forms obtained from a now defunct corporation, Dynamic Solutions, Inc. The letter claimed that the credit card company made a billing error because it failed to credit the account holder for a signed note, essentially a promissory note, that was entered into at the time of the application for, and issuance of, the credit card. The theory lacks any basis in law because, even were a promissory note given in satisfaction of the credit card debt, of which there is no evidence in this case, Citibank would still be entitled to seek collection of the amount owing under the promissory note. If the application for credit were a promissory note, as Carroll argues, then it would be collectible under the terms of the credit agreement entered into in this case, meaning that Citibank would be entitled to send a statement that reflects the amount owing on the note.

depositions, the district court agreed, finding that Citibank was entitled to judgment as a matter of law.

Carroll immediately filed a motion for reconsideration pursuant to I.R.C.P. 11(a)(2)(B). Carroll again argued that Citibank was not a real party in interest as required by I.R.C.P. 17(a), Citibank misrepresented the amount of the debt, and evidence was improperly admitted and considered in support of the summary judgment motion. Carroll also filed a document, simply styled "Objections," in which she argued that the court should not have granted Citibank's summary judgment motion because it had not yet ruled on Carroll's motion to dismiss for lack of standing. Carroll also argued the I.R.C.P. 17(a) real-party-in-interest issue in her Objections document. Citibank, in turn, filed memoranda in opposition to Carroll's motions, and also moved for entry of judgment on the summary judgment motion, along with an award of attorney fees and costs.

Ultimately, after several attempts at continuance, extension of discovery, and other dilatory tactics by Carroll, the district court denied Carroll's motion to reconsider and entered judgment for Citibank, along with an award of attorney fees and costs. The court also issued a protective order against further discovery because of Carroll's continuing requests for discovery and service of subpoenas throughout the pendency of the motion for reconsideration. Carroll filed a timely appeal to this Court.

## II.
## Issues on Appeal

The following issues are presented on appeal: (1) whether the issue of ICAA governance can properly be reviewed by this Court; (2) whether the district court erred in determining that Citibank was a real party in interest with standing to pursue the collection claim against Carroll; (3) whether Citibank is entitled to attorney fees and costs on appeal; and (4) whether Carroll's husband, David F. Capps, engaged in the unauthorized practice of law.

### A.
### Standard of Review

This Court exercises free review over constitutional issues, such as issues of standing and federal preemption. *See Fisk v. Royal Caribbean Cruise Lines, Ltd*, 141 Idaho 290, 292, 108 P.3d 990, 992 (2005). When reviewing the grant of a motion for summary judgment, this Court applies the same standard used by the district court in ruling on the motion. *Van v. Portneuf Med.*

*Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). "Summary judgment is properly granted when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Idaho R. Civ. P. 56(c)). The burden of demonstrating the absence of a genuine issue of material fact is on the moving party. *Id.* This Court must construe the record in favor of the nonmoving party, drawing all reasonable inferences in that party's favor. *Id.* If a court finds that reasonable minds could differ on conclusions drawn from the evidence presented, the motion must be denied. *Id.* However, the nonmoving party must respond to the motion with facts that specifically show there is an issue for trial; the showing of a mere scintilla of evidence will be insufficient to meet that burden. *Id.* The denial of a motion for reconsideration is reviewed for abuse of discretion. *Id.* at 560, 212 P.3d at 990.

**B.**

Throughout the proceedings in the district court and in her notice of appeal, Carroll argued that Citibank should not be able to collect her debt because it has failed to register with the State of Idaho, as required by the ICAA (Idaho Code sections 26-2221 to 2251). However, Carroll makes no mention of the ICAA argument in her opening brief. This Court will not consider an issue not "supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008); *see also* Idaho App. R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to authorities, statutes and parts of the transcript and the record relied upon.") Here, because Carroll has failed to make any argument or cite any authority in her opening brief to support her argument on the application of the ICAA, this Court need not consider the applicability of the ICAA to Citibank and the credit obligation in question.

**C.**

Carroll argues that Citibank's action should be dismissed because it is not a real party in interest. Carroll has two bases for this contention. First, Carroll argues that Citibank's assignment of the receivables from her account to a trust, as a part of an asset-securitization transaction, deprives Citibank of the right to sue because an assignor is not a real party in interest. Second, Carroll argues that because Citibank is not entitled to retain the receivables if recovered, it has suffered no injury and therefore lacks standing to sue. As a result, Carroll argues that the district court should not have granted summary judgment to Citibank because its

4

real-party-in-interest status and standing to bring suit present questions of material fact that should have been presented to a jury. Citibank, in turn, argues that it only made a partial assignment of its interest in Carroll's account and, because of its extensive role in controlling and servicing the account, it has a sufficient stake in the account to allow for a finding of real-party-in-interest status and standing as a matter of law. It also footnoted in its brief that despite the partial assignment, it was the sole owner of the account at the time this action was commenced because any interest of the trust had theretofore reverted back.

**1.**

"Every action shall be prosecuted in the name of the real party in interest." Idaho R. Civ. P. 17(a). A real party in interest is "one who has a real, actual, material, or substantial interest in the subject matter of the action." *Caughey v. George Jensen & Sons*, 74 Idaho 132, 134–35, 258 P.2d 357, 359 (1953). The main purpose of the real-party-in-interest rule is to ensure that the defendant will not be subjected to multiple obligations, and that the party bringing the action has the ability to protect the defendant from subsequent suits concerning the same obligation. *Id.* at 135, 258 P.2d at 359. "A party may have capacity to sue without being a real party in interest." 59 AM. JUR. 2D *Parties* § 43 (2009). However, where real-party-in-interest status has been made mandatory by statute or rule, as it has in Idaho, real-party-in-interest status must be demonstrated before a suit can proceed. *See* Idaho R. Civ. P. 17(a) ("Every action *shall* be prosecuted in the name of a real party in interest.") (emphasis added). Generally, the holder of legal title to the subject matter of a cause of action is a real party in interest. *Caughey*, 74 Idaho at 135, 258 P.2d at 3359. Legal title is defined as "title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." BLACK'S LAW DICTIONARY 1523 (8th ed. 2004).

It is unnecessary to address Carroll's arguments about Citibank's status as a real party in interest, as the plain language of Citibank's agreement with the trust to which it made the partial assignment shows that Citibank held full title to Carroll's account at the time it brought suit against her. The agreement between Carroll and Citibank gives the following terms for default:

> You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make payment to any other creditor when due . . . exceed your credit line without permission, . . . . If you default, we may close your account and demand immediate payment of the full balance.

5

Carroll made the last payment on her account on November 29, 2004. The amended complaint in this matter was not filed until July 10, 2006, over one-and-one-half years after Carroll made her last payment, meaning that she had been in default for almost eighteen months when Citibank filed suit. Furthermore, Citibank sent Carroll a letter in January 2005, responding to her billing error letter and notifying her that her account had been closed for failure to make payment, which is an event of default under the agreement between Citibank and Carroll. Billing statements sent to Carroll after December 2004 also made clear that Carroll's account was in default.

Under Citibank's agreement with the trust, any account that is delinquent for 185 days "shall be deemed a Defaulted Receivable" unless the obligor/debtor has declared bankruptcy or become insolvent at some earlier time. "Delinquent," in the context of a credit obligation, simply means "past due or unperformed." BLACK'S LAW DICTIONARY 460 (8th ed. 2004). "Deemed" means "[t]o treat something as if (1) it were really something else, or (2) it had qualities that it does not have," essentially, to establish an operative legal fiction. *Id.* at 446. Accordingly, the language of the defaulted-receivable provision of the trust agreement shows that it is triggered automatically once an account had been in default for 185 days, rendering the receivable from the account a defaulted receivable, despite the fact that other underlying conditions for defaulted-receivable status have not been met.

The "deemed" language of the trust agreement is important because of the way in which the agreement defines "defaulted receivables." The trust agreement defines "defaulted receivables" as accounts that "are charged off as uncollectible" in Citibank's files. While this may seem to require an affirmative action on the part of Citibank to characterize the account as a defaulted receivable, the deeming language in the agreement converts the receivable to a defaulted receivable after 185 days of default without affirmative action by Citibank. The trust agreement also provides that on the date that a receivable becomes a defaulted receivable, it will *automatically* be transferred back to the seller (Citibank) without any further action on the part of the trust or Citibank.[2]

---

[2] The relevant clause reads:

> [O]n the date when any Receivable in an Account becomes a Defaulted Receivable the Trust shall automatically and without further action or consideration be deemed to transfer, assign, set over and otherwise convey to the applicable Seller, without recourse, representation or warranty, all right, title and

6

In this case, Carroll's account was 185 days in default at some point in mid-2005, and the amended complaint was not filed until 2006, meaning that all interest in Carroll's account reverted to Citibank under the terms of the trust agreement before Citibank filed suit. Because all interest held by the trust in Carroll's account was transferred to Citibank before it sued Carroll, it held legal title to all aspects of the account, including the right to payment. As the holder of legal title, Citibank is a real party in interest, entitled to bring suit under I.R.C.P. 17(a) and the *Caughey* standard. As noted in *Caughey*, the purpose of the real-party-in-interest rule is to ensure that the defendant is not subjected to multiple obligations because both an assignee and assignor are seeking recovery. Because title to Carroll's account was vested entirely in Citibank at the time it brought suit and the trust had no legal interest in Carroll's account, there is no danger that Carroll will be subject to multiple obligations. Thus, because the plain language of the trust agreement demonstrates that Citibank was the real party in interest, and that no other party had any interest in Carroll's account at the time it brought suit, Citibank's real-party-in-interest status does not create a question of fact that would preclude the district court's grant of summary judgment.[3]

## 2.

Because Citibank was the sole owner of Carroll's account at the time it brought suit, it is entitled to recovery of the funds on that account and, therefore, has standing to sue. Questions of standing must be decided by this Court before reaching the merits of the case. *Taylor v. Maile*, 146 Idaho 705, 709, 201 P.3d 1282, 1286 (2009). Standing inquiries focus on the party seeking relief. *Id.* In order to demonstrate standing, a party must be able to "allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.*

Citibank has suffered an injury in this case because it has not been paid under its agreement with Carroll. Carroll's argument that Citibank lacked standing is largely focused on

---

interest of the Trust in and to the Defaulted Receivables arising in such Account, all monies due and to become due with respect thereto and all proceeds thereof
. . . .

[3] Carroll also argued that Citibank had not yet regained title to her account at the time of suit because it was required to generate paperwork when the account was transferred back from the trust to Citibank. This argument evidences a misunderstanding of the terms of the trust agreement. Provisions that require the generation of paperwork concern "ineligible receivables" rather than the "defaulted receivables" that are at issue in this case. Further, even were there a requirement that some paperwork be generated, the requirement would be irrelevant in light of the deeming language contained in section 2.09 of the trust agreement, providing that the interest transfers automatically on default without any action by either party.

her contention that, even if Citibank recovered in this suit, it would be contractually obligated to pay any recovery it received to the trust. Carroll argued that because Citibank was not entitled to retain any recovery it might be awarded on the account, it had failed to demonstrate any proof of damage. As discussed above, Citibank was vested with all with all interest in Carroll's account by the terms of the trust agreement when her account became more than 185 days delinquent; accordingly, Citibank is entitled to retain any recovery that is awarded in this action. Additionally, the record is replete with evidence demonstrating Citibank's entitlement to recovery on the account in the amount of the judgment entered by the district court. Thus, were Citibank to collect the amount shown to be due in this case, it would be entitled to that amount.

Therefore, Citibank has demonstrated that it has standing to sue because it suffered an injury that will be redressed by the relief awarded by the district court's grant of summary judgment. Accordingly, the district court's grant of summary judgment is affirmed.

### D.

Citibank argues that it is entitled to an award of attorney fees and costs pursuant to Idaho Code sections 12-120(3), 12-121, and 12-123, as well as Idaho Appellate Rule 41 and the contractual provisions in the agreement between Carroll and Citibank. Carroll does not address the issue of attorney fees. Citibank is entitled to its attorney fees and costs on appeal according to the agreement between the parties. The agreement between Citibank and Carroll provides "[i]f we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney's fees and court costs or any other fees, to the extent permitted by law." Idaho Rule of Civil Procedure 54(e)(1) allows for attorney fees to be awarded when provided for by the contract between the parties. Idaho R. Civ. P. 54(e)(1); *Indian Springs, L.L.C. v. Indian Springs Land Inv., L.L.C.*, 147 Idaho 737, 751, 215 P.3d 457, 471 (2009). In order to be entitled to fees under the agreement, Citibank is required to show that it retained an attorney that was not its salaried employee to collect on Carroll's account. This showing is apparent in the record from the affidavits in support of the fee award entered in the district court, as well as the averments in the amended complaint. Accordingly, Citibank is entitled to an award of attorney fees and costs under the agreement between the parties. Its other bases for attorney fees need not be addressed.

### E.

Although not raised by the parties as an issue on appeal, this Court cannot ignore the fact that Carroll's husband, David F. Capps, engaged in the unauthorized practice of law in this

matter, over Citibank's repeated objections and with the approval of the district court judge. The practice of law has been defined as "doing or performing services in a court of justice, in any matter . . . in a larger sense, it includes legal advice and counsel, *and the preparation* of instruments and contracts through which legal rights are secured . . . ." *In re Matthews*, 58 Idaho 772, 776, 79 P.2d 535, 537 (1938). The practice of law must be something beyond merely filling in blanks on preprepared forms. *Id.* A person who engages in the practice of law without a license may be held in contempt of court, fined up to $500, and sentenced to up to six months in prison. I.C. §§ 3-104, 3-420. We reiterate our recent holding in *Indian Springs* that while a person has a right to represent himself or herself pro se, the right does not extend to the representation of other persons or entities. 147 Idaho at 734–35, 215 P.3d at 464–65; *see also Weston v. Gritman Mem. Hosp.*, 99 Idaho 717, 720, 587 P.2d 1252, 1255 (1978).

In this case, the record clearly shows that Capps, who is not licensed to practice law, represented Carroll. Carroll admitted in her response to requests for admissions that Capps had drafted the pleadings and papers that were filed on her behalf in this case. Capps himself made similar admissions on the record during a court proceeding, indicating that he was drafting a brief that would filed with the district court. Capps argued in motion hearings before the district court, over Citibank's objection, with the approval of the district judge.

The integrity of our court system depends on adherence of judicial officers to the laws, as written by the Legislature and interpreted by this Court. In district court, the district judge is the gatekeeper. The district judge is responsible for seeing that the parties comply with the law, even though the judge may disagree with the provisions adopted by the Legislature or may find them burdensome to apply. It is surprising that a district judge would allow an individual appearing before him to violate legislative dictates prohibiting the unauthorized practice of law, despite repeated objections of counsel representing the opposing party. The Court must strongly emphasize that this type of conduct is not to be permitted. After all, we are a State and Nation of laws, not individuals who can disregard duly enacted laws as they see fit.

### III.

We affirm the district court's order granting summary judgment in favor of Citibank and award Citibank its costs and attorney fees on appeal.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

9