IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39822

| | | |
|---|---|---|
| JEFFRY J. BLACK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Boise, September 2013 Term |
| | ) | |
| IDAHO STATE POLICE, an executive | ) | 2013 Opinion No. 123 |
| department of the STATE OF IDAHO; and | ) | |
| COLONEL G. JERRY RUSSELL, Director | ) | Filed: November 27, 2013 |
| of the IDAHO STATE POLICE, an | ) | |
| individual, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

The judgment of the district court is affirmed.

Rossman Law Group, PLLC, Boise, for appellant. Kimberly L. Williams argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Carl J. Withroe argued.

_____

J. JONES, Justice.

This appeal arises from the termination of Jeffry Black, the former Executive Director of the Idaho Peace Officer Standards and Training Council (POST). Black asserts that the Idaho State Police (ISP) violated two provisions of the Idaho Protection of Public Employees Act (commonly, the "Whistleblower Act") when it terminated him. The district court granted summary judgment in favor of ISP, holding that Black failed to engage in activity protected under the Whistleblower Act. Black filed a timely appeal to this Court.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On August 9, 2006, Colonel R. Dan Charboneau, then director of ISP, appointed Jeffry Black as the Executive Director of POST, a division of the Idaho State Police. POST is

1

empowered to establish standards for the training, education, employment, and certification of peace officers in Idaho. I.C. § 19-5109. Col. Charboneau stated in the appointment letter that he was Black's direct supervisor. Black understood that he reported to Col. Charboneau for "administrative" matters and to POST for "operational" matters. In 2007, Colonel Jerry Russell replaced Col. Charboneau as ISP director. It was Col. Charboneau, and later, Col. Russell, who conducted Black's yearly performance evaluations.

In November of 2008, POST began to have "significant budget difficulties." In fact, on November 13, ISP transferred $50,000 to POST so that it could pay its bills and payroll expenses for the month. As a result of these financial woes, Col. Russell ordered an investigation and "required Black and another POST staff member, Richard Juengling, to explain the accounting for the month and submit a proposal for balancing the POST budget." Black did not fully comply with this directive, indicating to Col. Russell that he (Black) answered only to POST under I.C. § 19-5116.[1] In December of 2008, POST unanimously voted "to direct the POST Council's Executive Director to cooperate with the Director of the Idaho State Police and answer to the Director of the Idaho State Police with regard to the fiscal matters relating to the operation of the [POST] Academy."

In addition to the budget difficulties, Col. Russell soon became aware of various personnel management issues at POST and received a report that Black was not carrying out directives given to him by POST. In light of that information, Col. Russell requested a Personnel Management Audit Report (Report), which was completed in June of 2009. On June 15, Col. Russell directed Black to provide him with a written response to the concerns raised in the Report by June 29, 2009. A month after that deadline, Black provided a cursory response to some portions of the Report but refused to respond to any issues "outside [his] control or findings that represented less than 30% of the staff's responses." On August 3, Col. Russell sent Black a memorandum in which he stated that Black's response to the Report was not adequate. He directed Black to provide a further written response to the Report and to provide him with a draft of a letter to POST staff regarding the personnel issues raised in the Report, both no later than August 28.

---

[1] I.C. § 19-5116(a) provides: "There is hereby established in the state treasury, the peace officers standards and training fund. All moneys deposited to the fund shall be expended by the peace officer standards and training council . . . ." I.C. § 19-5116(a).

More conflict ensued when Col. Russell sought to transfer financial specialist Lori Guthrie from POST back to ISP where she had formerly been stationed. Black wanted Guthrie to remain at the POST administrative office and asserted that the decision whether to relocate her was exclusively within his purview under IDAPA 11.11.01.031.03.[2] In an August 27 memorandum to Col. Russell, Black indicated that he "will not be responding any further regarding the [Report]." With regard to the relocation of Ms. Guthrie, Black stated, "I am obligated under IDAPA to work within its parameters regarding the operation of POST and it is my decision that it is in the best interest of POST to keep it[s] fiscal team located together in the POST administrative offices."

On September 30, 2009, Col. Russell provided Black with a Notice of Contemplated Action, proposing to terminate his employment on three grounds: "(1) Black's refusal to provide Russell with his proposed letter to POST staff regarding his proposals for addressing concerns in the Personnel Management Audit Report, (2) Black's refusal to return Ms. Guthrie to ISP's offices, and (3) Black's notification to Russell that Black would not respond to Russell's requests regarding the Audit Report." On November 3, 2009, POST concluded that Col. Russell had authority to give Black the directives that he did, and it agreed with Col. Russell's decision to terminate Black. On November 5, 2009, Black was terminated. Black appealed his termination to the Idaho Personnel Commission, where a hearing officer entered a preliminary order granting summary judgment to ISP. Black sought review and the Personnel Commission affirmed the hearing officer in a decision issued on April 12, 2011.

On May 3, 2010, Black initiated the present action in district court. The district court granted summary judgment in favor of ISP, holding that Black failed to demonstrate he had engaged in protected activity as contemplated by the Whistleblower Act. Black filed a motion for reconsideration with the district court, which was ultimately denied. Black timely appealed.

## II.
## ISSUES ON APPEAL

I. Did the district court err in granting summary judgment in favor of ISP?

---

[2] The version of IDAPA 11.11.01.031 in effect at the time reads in pertinent part:
    **03. Supervision Over Employees.** The Executive Director shall have supervision over the employees and other persons necessary in carrying out the functions of POST.
    **04. Administration.** For administrative purposes, the Executive Director and his staff will be governed by the Policies and Rules of the state of Idaho and the Idaho State Police, concerning but not limited to fiscal, purchasing, and personnel matters.

II. Is Black entitled to attorney fees on appeal pursuant to I.C. § 6-2106(5)?

### III.
### DISCUSSION

#### A. Standard of Review.

"Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion." *Steele v. Spokesman-Review*, 138 Idaho 249, 251, 61 P.3d 606, 608 (2002). Under I.R.C.P. 56(c), summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court must "liberally construe . . . the record in favor of the party opposing the motion and draw . . . all reasonable inferences and conclusions in that party's favor." *Steele*, 138 Idaho at 251, 61 P.3d at 608. However, "'[t]his Court exercises free review over questions of law.'" *Fields v. State*, 149 Idaho 399, 400, 234 P.3d 723, 724 (2010). Statutory interpretation is a question of law. *Id*.

#### B. The district court correctly granted summary judgment in favor of ISP.

Idaho's Whistleblower Act was enacted "to protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. § 6-2101; *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 557, 212 P.3d 982, 987 (2009). To present a *prima facie* case for retaliatory discharge under the Whistleblower Act, the plaintiff must show: "(1) he was an 'employee' who engaged or intended to engage in protected activity; (2) his 'employer' took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Van*, 147 Idaho at 558, 212 P.3d at 988. Here, elements two and three are not in dispute. Rather, the parties focused exclusively on whether Black engaged, or intended to engage, in protected activity.[3]

Black alleges that his conduct constitutes protected activity under two provisions of the Whistleblower Act: I.C. § 6-2104(1) (the "communication clause") and I.C. § 6-2104(3) (the

---

[3] Protected activity may arise in several forms. Examples of protected activity include (1) reporting safety violations that potentially violate federal regulations (*Van*, 147 Idaho at 559–60, 212 P.3d at 989–90); (2) documenting a waste of public funds and manpower (*Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)); and (3) communicating a mayor's potential conflict of interest with an employee health plan that could potentially waste public resources. *Smith v. Mitton*, 140 Idaho 893, 898–99, 104 P.3d 367, 372–73 (2004).

"refusal clause"). Pursuant to the communication clause, "[a]n employer may not take adverse action against an employee because the employee . . . communicates in good faith the existence of . . . a violation or suspected violation of a law, rule or regulation adopted under the law of this state." I.C. § 6-2104(1)(a). A communication is made in good faith "if there is a reasonable basis in fact for the communication. Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous." I.C. § 6-2104(1)(b). Whether Black communicated in good faith "is a question of fact, and summary judgment is appropriate only if, after viewing the evidence in the light most favorable to [the non-moving party], reasonable minds could only conclude that" the communication was malicious, false, or frivolous. *Curlee*, 148 Idaho at 400, 224 P.3d at 467.

Pursuant to the refusal clause, "[a]n employer may not take adverse action against an employee because the employee has objected to or refused to carry out a directive that the employee reasonably believes violates a law or a rule or regulation adopted under the authority of the laws of this state, political subdivision of this state or the United States." I.C. § 6-2104(3). "Reasonably believes" is not defined in the statute, nor is there an Idaho case that directly addresses what constitutes a reasonable belief under this provision. *See* I.C. § 6-2103. However, in *Patterson v. State, Dep't of Health and Welfare*, this Court analyzed whether a plaintiff's retaliation claim under the Idaho Human Rights Act could proceed to the jury based on her reasonable belief that she engaged in protected activity. 151 Idaho 310, 320, 256 P.3d 718, 728 (2011). The *Patterson* Court favorably quoted an 11th Circuit decision that stated:

> [a] plaintiff can establish a prima facie case of retaliation . . . if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. . . . It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id.* (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997)).

Black contends that he communicated, in good faith, suspected violations of the law on the following occasions: (1) during a November 24, 2008 POST Council meeting, when "Black communicated his belief that it was appropriate for [him] to discuss the fiscal situation of POST

5

with then-Chairman Aman[;]" (2) the following day when "Black advised Col. Russell that 'under [I.C.] 19-5116 the budget for POST is clearly under the direction of the POST Council[;]'" (3) via an August 12, 2009 letter where "Black advised Col. Russell of Black's belief that Col. Russell's directives regarding supervision and location of POST employees were in violation of IDAPA 11.11.031.03[;]" and (4) in an August 27, 2009 letter to Col. Russell in which Black stated, "[w]ith all due respect to you and your position as Director of ISP, I am *obligated under IDAPA* to work within its parameters regarding the operation of POST and it is my decision that it is in the best interest of POST to keep it[s] fiscal team located together in the POST administrat[ive] offices." (emphasis in original).

Under the refusal clause, Black contends his belief that the directives he was given by Col. Russell were in violation of a law or rule was objectively reasonable because: (1) evidence shows that there was "a history of disputes between POST Council and ISP regarding the role of each entity[;]" (2) the opinion of the Standards, Certifications & Support Manager, Dick Juengling, that Black reports to the POST Council; (3) the fact Col. Russell sought the advice of counsel with regard to "the interplay between POST Council and ISP[;]" and (4) "the unique position held by Black[,]" as Executive Director.

Black's activities are simply not the type typically protected in Whistleblower cases; nor would the policy behind the Whistleblower Act—to "protect the integrity of government"—be furthered by holding that Black engaged in protected activity. Implicit in the Whistleblower Act is the requirement that the employer engage in some sort of predicate act—which could include ordering an employee to do something illegal, or engaging in illicit activities itself—that triggers the applicability of the Act in the first place. This predicate act is entirely lacking here. The Whistleblower Act was not triggered because Col. Russell was simply asking Black to do his job. Even if Col. Russell did not have the authority to give the directives he did, as Black alleges, it is unclear how the laws cited by Black would have been violated.

Black's beliefs that the directives from Col. Russell were in violation or suspected violation[4] of a law or rule and that he would be in violation of a law or rule in complying with said directives, are not objectively reasonable, even accepting as fact Black's contentions that

---

[4] Black places heavy emphasis on the suspected violation language, contending that he is entitled to the protection of I.C. § 6-2104(1)(a) even though a violation of law is not confirmed, but merely suspected, citing our holding in *Van*. 147 Idaho at 559, 212 P.3d at 989. However, a subjective suspicion does not satisfy the requirements of the statute. The suspicion of illegality must be objectively reasonable.

there was a history of disputes between POST and ISP regarding the role of each entity and that Black reported to POST. The plain language of the then-extant version of IDAPA 11.11.01.031.04 provided that the Executive Director of POST "shall be governed by . . . the Idaho State Police, concerning but not limited to fiscal, purchasing, and personnel matters." And, Black could both report to POST and be answerable to the head of ISP, the department of State government that POST was a part of and to which POST was answerable. The ISP director was at the top of the department of government encompassing POST and employing Black. In his complaint, Black acknowledged that he was an employee of ISP and that ISP was his employer. In his appointment letter, signed by the previous director of ISP, Black was notified that the director would be his "direct supervisor." Indeed, the ISP director conducted Black's performance evaluations for 2006−2008 and was designated therein as Black's "supervisor/manager." Defiance of a supervisor/manager's directives might be expected to adversely impact a performance evaluation and result in disciplinary action.

This is not a case where the employee, Black, was faced with conflicting directives from two governmental entities, based on conflicting statutes or rules. Black has presented absolutely no evidence to indicate that Col. Russell or his department violated any statute or rule or that any of his directives clashed with those of POST. In fact, POST, the only entity that Black claims he needed to respond to, unanimously passed a motion directing Black "to cooperate with the Director of the Idaho State Police and answer to the Director of the Idaho State Police with regard to the fiscal matters relating to the operation of the [POST] Academy."

The fact that Col. Russell sought advice from ISP's legal counsel regarding the proper chain of command does not weigh in Black's favor. The request for legal advice appears to have been prompted by Black's contention that he did not answer to Col. Russell and it appears to have been prudent on Col. Russell's part to make the request for advice on that issue. Black would have been well advised to similarly have sought legal advice before ignoring or defying Col. Russell's requests and directives.

Finally, Black's contention that he held a unique position, justifying his refusal to take direction from Col. Russell, is of no avail. With regard to fiscal matters, IDAPA 11.11.01.031.04, a regulation adopted by POST, clearly recognized ISP's authority to govern POST's executive director and staff with regard to fiscal matters. Despite Black's contentions to the contrary, I.C. § 19-5116, while establishing POST's funding mechanism, contains nothing

inconsistent with the regulation. Similarly, the same POST regulation clearly recognizes ISP's governing authority over POST staff in personnel matters. This would include determining the location where an ISP employee, such as Ms. Guthrie, would perform her work. Thus, even if Black held a unique position, he had no ground to believe that he was not subject to the fiscal and administrative control of ISP.

In sum, any belief Black may have had that Col. Russell or ISP had committed a violation or suspected violation of any statute or rule at issue here was not objectively reasonable. Disputing proper administrative authority does not constitute protected activity. In this case, it amounted to classic insubordination. Unfortunately for Black, the Whistleblower Act is not intended to protect those who engage in bureaucratic turf squabbles.

### B. Black is not entitled to attorney fees on appeal.

Black requests his attorney fees on appeal, stating:

> The Whistleblower Act provides that a court may order 'payment by the employer of reasonable costs and attorneys' fees' to the discharged employee. I.C. § 6-2106. *See also Smith v. Mitton*, 140 Idaho 893, 902, 104 P.3d 367, 376 (2004). Upon remand of this matter to the District Court for further proceedings, Black will be the prevailing party on this appeal. As such, Black should be awarded his costs and attorney fees incurred from this appeal.

Black is not the prevailing party and the Court, in its discretion, finds no reason to award him attorney fees on appeal.

### IV.
### CONCLUSION

We affirm the judgment of district court. Costs on appeal are awarded to Respondents.

Chief Justice BURDICK, and Justices EISMANN, HORTON, and Justice Pro Tem SCHROEDER CONCUR.