## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket Nos. 45698 & 45699

| | | |
|---|---|---|
| BRANDON ELLER, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IDAHO STATE POLICE, an executive agency of the State of Idaho, | ) ) | |
| | ) | |
| Defendant-Appellant. | ) | Boise, February 2019 Term |
| _____ | ) | |
| | ) | Filed: May 24, 2019 |
| BRANDON ELLER, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IDAHO STATE POLICE, an executive agency of the State of Idaho, | ) ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy Baskin, District Judge.

The judgment of the district court is affirmed in part and vacated in part.

Brassey & Crawford, PLLC, Boise, for appellant. Andrew C. Brassey argued.

Strindberg & Scholnick, LLC, Boise, for respondent. Erika Birch argued.

_____

BEVAN, Justice.

This appeal arises from a retaliation action under the Idaho Protection of Public Employees Act (the "Whistleblower Act") and a negligent infliction of emotional distress claim against the Idaho State Police. Plaintiff Brandon Eller alleges the Idaho State Police (ISP)

retaliated against him in two areas: first, after he testified against another officer in a preliminary hearing, and second, when he voiced objections to a new ISP policy requiring members of the Crash Reconstruction Unit to destroy draft and peer review reports. A jury awarded Eller $30,528.97 in economic damages under the Whistleblower Act and $1.5 million in non-economic damages for his negligent infliction of emotional distress claim. The district court then entered a memorandum decision and order reducing the award for Eller's negligent infliction of emotional distress claim to $1,000,000 because Idaho Code section 6-926 caps the State's liability for actions brought under the Idaho Tort Claims Act (ITCA) at $500,000 per occurrence. Both Eller and ISP timely appealed on several grounds, and their appeals have been consolidated.

We hold that the district court incorrectly applied the ITCA to Eller's claim because the Whistleblower Act supplants it. We vacate the district court's rulings that the Whistleblower Act bars non-economic damage awards and that the ITCA caps Eller's damages, and remand for a partial new trial regarding non-economic damages solely under the Whistleblower Act.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2011, there was a fatal traffic accident in Payette County involving Payette County Deputy Scott Sloan and civilian Barry Johnson. Sloan was responding to a 911 call, traveling significantly above the speed limit on a two-lane rural highway, when he came upon Johnson's Jeep. Deputy Sloan started to pass Johnson on the left when Johnson turned into his driveway, causing Sloan to crash into the Jeep. Johnson died as a result of the crash. Because the crash involved an on-duty law enforcement officer and a fatality, the ISP conducted the investigation. District 3 Trooper Justin Klitch was the primary investigating officer, while Corporal Quinn Carmack was the assigned crash reconstructionist from District 3's Crash Reconstruction Unit (CRU). CRU member Brandon Eller, who was the lead reconstructionist in District 3, was assigned to help Klitch interview Sloan.

Following his investigation, Carmack's initial report revealed that Sloan drove his patrol vehicle 115 miles per hour and made an unsafe pass around Johnson's Jeep, causing the crash. While multiple tests showed Johnson had a blood alcohol concentration (BAC) at the time of the crash ranging between .053 and .1271 after five blood draws, neither Carmack nor Eller believed Johnson's BAC to be a causational factor. After Carmack's reconstruction report was peer

2

reviewed by two other reconstructionists, the CRU statewide coordinator for all six ISP districts, Specialist Fred Rice, approved the report for filing.

Just before the final report approval, District 3's top commanders Captain Steve Richardson and Lieutenant Sheldon Kelley intervened. According to the ISP, Lieutenant Kelley supervised the investigation and believed Carmack's initial report was deficient, even to the point of excluding exculpatory material: Johnson's blood alcohol level and the fact he was legally intoxicated at the time of the crash. On December 21, 2011, Kelley held a meeting with Captain Richardson, Rice, and Carmack to discuss the report. Carmack described the meeting as "heated," with Kelley yelling at him, and the supervisors wanting several changes made to the report. Eller testified that the commanding officers also called him in for a "heated" meeting to discuss Carmack's report: "I got the impression they were trying to side me up against Carmack and support what they wanted, as opposed to him doing an unbiased reconstruction of the crash."

Following the meetings, Carmack changed the reconstruction report to read "conclusions" instead of "causational factors," and edited facts within the conclusions section. He also added the information that "Johnson had a femoral artery blood alcohol level of 0.08," explaining that was the "most reliable" blood draw. That said, Carmack felt the edits were factually misleading.

The following year, Gem County brought a felony vehicular manslaughter charge against Sloan. At the preliminary hearing on April 13, 2012, Carmack and Eller were called as prosecution witnesses. Both Carmack and Eller testified that they believed that Johnson's blood alcohol level was not a causational factor of the crash, and Carmack also testified that his superior officers instructed him to remove the statements suggesting Sloan drove recklessly. Eller testified that Sloan drove his vehicle in an unsafe or reckless manner.

Eller later testified that after the preliminary hearing a commanding officer accused Eller of lying on the stand. Rice testified that another commanding officer said Carmack and Eller would "be lucky to have their jobs patrolling nights and weekends." In May 2012—one month after the April 2012 preliminary hearing—Eller received a downgrade in his performance review and was described as causing "dissention" [sic] within the District 3 patrol ranks. This mark affected his eligibility for pay raises. That same month, Kelley was promoted to Headquarters Captain and assigned to be the manager of ISP's state-wide Crash Reconstruction Program.

3

A year later, in July 2013, ISP issued a directive to destroy all peer review reports within the CRU, which had previously been retained for, among other things, the reports' potential significance as exculpatory evidence. Eller approached both his lieutenant and Kelley to express concerns with the new directive—especially legal concerns that the ISP was destroying evidence in criminal and civil cases—but Eller was told by the commanding officers to follow the directive anyway. More specifically, Eller believed the policy could create a *Brady* issue where potentially exculpatory evidence would be destroyed rather than turned over to the defense. Eller refused to follow the new policy and continued to maintain peer review records.

Over the next several months, several changes within the ISP impacted Eller's job duties and benefits directly or through the CRU structure. In October 2013, the ISP restructured CRU which placed Eller back on patrol duties, including night and weekend shifts he had not previously had to work, while requiring that he still perform his reconstructionist duties. These changes damaged Eller's work and home life, including his personal health. The ISP also removed Eller from his position as Interim Statewide CRU Coordinator—dissolving that position to split the responsibilities between two other individuals—and then rejected his choice point[1] application, which would have given him a pay raise as a reconstructionist instructor. In fact, the ISP prohibited Eller from teaching altogether. On May 27, 2014, Eller resigned as an ISP crash reconstructionist.

Eller sued ISP on January 6, 2015, under the Idaho Protection of Public Employees Act, also known as the "Whistleblower Act." He alleged unlawful retaliation by the ISP because he testified against a fellow police officer at a preliminary hearing and for objecting to the ISP's policy requiring CRU members to destroy all but the final drafts of their reports.

A jury trial started on August 14, 2017. At trial, Eller testified on his physical manifestations of emotional distress, including weight loss, sickness, headaches, skin issues, trouble sleeping, and loss of appetite. In addition, both Carmack and Rice testified on their respective Office of Professional Standards (OPS) investigations, administrative leave, and return to the ISP. Rice also testified on his retirement from the ISP. The ISP objected to several questions presented on these matters on relevance grounds.

---

[1] ISP officers have a right to accrue a choice point for taking on added responsibility. A choice point includes a pay raise.

On August 30, 2017, the jury returned a verdict in Eller's favor on both of his claims, and awarded him $30,528.97 in economic damages under the Whistleblower Act and $1.5 million in non-economic damages for his negligent infliction of emotional distress claim. While Eller sought emotional distress damages under both his Whistleblower Act and negligent infliction of emotional distress claims, the district court ruled, as a matter of law, that the jury was precluded from awarding emotional distress damages under the Whistleblower Act. The special verdict form thus only permitted the jury to award non-economic damages under Eller's negligent infliction of emotional distress claim.

Following the trial's conclusion, the ISP moved to reduce Eller's non-economic damages, and any costs and attorney fees, to a total sum of $500,000 based on Idaho Code section 6-926's damages cap. The ISP argued that the damage cap applied because (1) there was no applicable, valid collectible liability insurance coverage in excess of that limit to satisfy plaintiff's state tort claim, and (2) the adverse actions against Eller arose out of a single occurrence. The district court then entered a memorandum decision and order reducing the award for Eller's negligent infliction of emotional distress claim to $1,000,000 under Idaho Code section 6-926, finding Eller had suffered at least two occurrences under the ITCA. Three months later, the district court entered an amended judgment to include its decision awarding attorney's fees and costs to Eller.

Both Eller and the ISP timely appealed on various grounds, and their appeals have been consolidated before this Court.

## II.    STANDARD OF REVIEW

"This Court exercises free review over statutory interpretation because it presents a question of law." *State v. Amstad*, 164 Idaho 403, ___, 431 P.3d 238, 240 (2018). Likewise, this Court freely reviews conclusions of law, drawing its own conclusions from the facts in the record. *Johnson v. Crossett*, 163 Idaho 200, 205, 408 P.3d 1272, 1277 (2018). Additional standards of review will be addressed as they become relevant.

## III.    ANALYSIS

### A. The Whistleblower Act provides Eller with a non-economic damages remedy independent of the ITCA's damages cap.

After the jury returned a verdict awarding Eller $30,528.97 in economic damages under the Whistleblower Act and $1.5 million in non-economic damages for his negligent infliction of emotional distress claim, the district court reduced the emotional distress award to $1,000,000. The court explained that Idaho Code section 6-926 caps the State's liability for actions brought

5

under the ITCA at $500,000 per occurrence. The court found that Eller had shown at least two occurrences, concluding that an "occurrence" referred to each adverse action against Eller. On appeal, the parties disputed the meaning of "occurrence" under the ITCA. That said, we hold that the ITCA does not apply to Eller's damages under the Whistleblower Act because (1) the Whistleblower Act supplants the ITCA, (2) the Whistleblower Act permits an award of non-economic damages, and (3) *Wright v. Ada County*, 160 Idaho 491, 501–02, 376 P.3d 58, 68–69 (2016) incorrectly permitted a separate damages action within a case brought under the Whistleblower Act.

### 1. The Whistleblower Act supplants the ITCA.

Statutory interpretation requires this Court to first consider the plain language of the statute, with the literal words as the best guide to determining legislative intent. *Marquez v. Pierce Painting, Inc.*, 164 Idaho 59, ___, 423 P.3d 1011, 1015–16 (2018). Idaho law provides: "Where a statute is clear and unambiguous, the expressed intent of the legislature shall be given effect without engaging in statutory construction." *Id.* (citation and corrections omitted). In addition, where two statutes conflict, courts should apply the more recent and more specifically applicable statute. *See Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, ___, 429 P.3d 168, 177 (2018) (quoting *George W. Watkins Family v. Messenger*, 118 Idaho 537, 797 P.2d 1385 (1990)); *Johnson v. Boundary Sch. Dist. No. 101*, 138 Idaho 331, 335, 63 P.3d 457, 461 (2003).

In this case, two competing acts potentially cover the conduct at issue: the ITCA and the Whistleblower Act. While both statutes allow for a cause of action by government employees suffering damages, they also contain conflicting provisions. As a result, we are called upon to determine whether one or both of the two competing acts applies to whistleblower claims.

The ITCA became Idaho law in 1971 "to provide "much needed relief to those suffering injury from the negligence of government employees." *Rees v. State, Dep't of Health & Welfare*, 143 Idaho 10, 19, 137 P.3d 397, 406 (2006) (citation omitted). Courts construe the ITCA liberally with liability as the rule and immunity as the exception. *Id.*; *Grabicki v. City of Lewiston*, 154 Idaho 686, 691, 302 P.3d 26, 31 (2013). Under the ITCA a plaintiff can bring an action within two years after the date the claim arose, or reasonably should have been discovered, and damages are generally capped at $500,000 per occurrence or accident. I.C. §§ 6-911 (limitation of actions), 6-926 (limits of liability). In contrast, the Idaho Legislature passed the Whistleblower Act over twenty years later in 1994 "to protect the integrity of government by

6

providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. § 6-2101. The time limit for bringing a whistleblower claim is much shorter than provided in the ITCA. A plaintiff must bring such an action within 180 days of the alleged Whistleblower Act violation "for appropriate injunctive relief or actual damages, or both." I.C. § 6-2105(2).

In addition to these discernible differences, the Whistleblower Act never mentions a damages amount or cap, nor does it reference the ITCA. Rather than protect individuals as victims of general governmental torts and damages—as under the ITCA—the Whistleblower Act provides an unambiguous "legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. § 6-2101. In fact, as noted, the Whistleblower Act's only limitation is time based—a plaintiff has 180 days to file his action, a far shorter time than if he brought a negligent infliction of emotional distress claim under the ITCA. I.C. § 6-2105(2) ("a civil action for appropriate injunctive relief or actual damages, or both, [must be filed] within one hundred eighty (180) days after the occurrence of the alleged violation of this chapter.")

"A basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general." *In re City of Shelley*, 151 Idaho 289, 294, 255 P.3d 1175, 1180 (2011); *see also Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 429 P.3d 168, 177 (2018). Thus, "where two statutes appear to apply to the same case or subject matter, the specific statute will control over the more general statute." *State v. Barnes*, 133 Idaho 378, 382, 987 P.2d 290, 294 (1999). We thus conclude that the more-specific Whistleblower Act applies over the more-general ITCA when both statutes may cover an action for damages. As a result, the Whistleblower Act's provisions govern the causes of action that may be brought by a whistleblower such as Eller.

This Court generally addressed the dichotomy between the Whistleblower Act and a common law breach of contract claim in *Van v. Portneuf Medical Center*, 147 Idaho 552, 561, 212 P.3d 982, 991 (2009). In *Van*, we held two things that are relevant to our holding today: first, that the plaintiff's common law claim for wrongful discharge was supplanted by the Whistleblower Act; and second, the ITCA and its notice provisions did not apply to whistleblower claims. *See id*. at 558, 212 P.3d at 988. As we noted there, the Legislature did not link the Whistleblower Act to the ITCA, and thus the Whistleblower Act supplants the ITCA:

7

> [T]he statutory nature of the [whistleblower] cause of action does not automatically render it subject to the ITCA. In fact, we hold the opposite to be true: the whistleblower claim is purely a statutory remedy against governmental employers and there is no reason to assume that the Legislature intended those alleging claims under the statute to have to comply with the notice provision of the ITCA where the Legislature did not specifically require it.

*Id.*

Ultimately, while both statutes provide avenues for relief for citizens injured at the hands of government actors, the Whistleblower Act provides statutory remedies which supplant, and thus preclude, common law causes of action. The differences are evident on the face of each statute. The ITCA applies to torts; the Whistleblower Act applies to any damages caused by adverse employment actions taken against governmental employees. The ITCA limits damages to $500,000 per occurrence; the Whistleblower Act does not limit damages, but provides that a wronged employee is entitled to actual damages "for injury or loss caused by each violation." I.C. §6-2105(1). It is also worthy of mention that the Whistleblower Act is of more-recent adoption, and as noted is the more-specific pronouncement by the Legislature regarding an employee's claims for adverse actions taken against him. I.C. § 6-2104. Thus, as the newer statute with greater specificity and applicability, the Whistleblower Act and its statutory causes of action control in full. Those causes of action would supplant claims for negligent infliction of emotional distress, as Eller sought below. For that reason, the "occurrences" limitation in the ITCA is not relevant to the plaintiff's claims in this regard and the district court erred in applying the ITCA to Eller's whistleblower claims and damages. As a result, we need not address the parties' arguments on their competing interpretation of an occurrence or other issues raised only under the ITCA. They are moot.

## 2. The Whistleblower Act permits an award of non-economic damages.

Eller contends that the Whistleblower Act's provision of remedies includes compensatory emotional distress damages, while the ISP argues the Act's express terms limit the type of damages recoverable. Both parties argue that the plain language of the statute supports their interpretation. The district court ruled that the Whistleblower Act does not permit an award of non-economic damages because Idaho Code section 6-2106 limits the relief available to plaintiffs. We disagree.

The Whistleblower Act defines "damages" in Idaho Code section 6-2105(1) as "damages for injury or loss caused by each violation of this chapter, and includes court costs and

reasonable attorneys' fees." Employees who allege Whistleblower Act violations can bring a civil action "for appropriate injunctive relief or actual damages, or both, within one hundred eighty (180) days after the occurrence of the alleged violation of this chapter." I.C. § 6-2105(2). A separate provision in the Whistleblower Act then permits a court, when rendering a judgment under the Whistleblower Act, to order

> any or all of the following:
>
>> (1) An injunction to restrain continued violation of the provisions of this act;
>>
>> (2) The reinstatement of the employee to the same position held before the adverse action, or to an equivalent position;
>>
>> (3) The reinstatement of full fringe benefits and seniority rights;
>>
>> (4) The compensation for lost wages, benefits and other remuneration;
>>
>> (5) The payment by the employer of reasonable costs and attorneys' fees;
>>
>> (6) An assessment of a civil fine of not more than five hundred dollars ($500), which shall be submitted to the state treasurer for deposit in the general fund.

I.C. § 6-2106.

As noted, under the rules of statutory interpretation, we must first look to the statute's plain language, using the literal words as the best guide to determining legislative intent. *Marquez,* 164 Idaho at ___, 423 P.3d at 1015–16. When the language is clear and unambiguous, the Legislature's expressed intent will be given effect without the court engaging in statutory construction. *Id.* "Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations." *Id.* Even so, statutory language is not ambiguous simply because parties present conflicting interpretations. Instead, the statute is ambiguous only "where reasonable minds might differ or be uncertain as to its meaning." *Id.* Thus, this Court reviews a statute "according to its plain meaning, while not losing sight of its 'potency.'" *Id.*

In examining the plain language of the two statutory provisions, the Whistleblower Act clearly provides a whistleblower claimant with an actual damages remedy. "Actual damages" is defined broadly as an "amount awarded to a complainant to compensate for a proven injury or loss," and is synonymous with compensatory damages, tangible damages, and real damages. *Actual damages*, BLACK'S LAW DICTIONARY (8th Ed. 2004). This Court has interpreted statutes providing remedies broadly, to satisfy their remedial purposes. *E.g.*, *Hill v. Am. Family Mut. Ins.*

9

*Co.*, 150 Idaho 619, 625–26, 249 P.3d 812, 818–19 (2011) (Uninsured and underinsured motorist statute is remedial); *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007) (Idaho's long-arm statute is remedial legislation designed to provide a forum for Idaho residents and should be liberally construed to effectuate that purpose); *Page v. McCain Foods, Inc.*, 141 Idaho 342, 346, 109 P.3d 1084, 1088 (2005) (Idaho's workers' compensation law is remedial legislation); *see also* 3 Sutherland, § 60.2 (7th ed. 2007) ("[R]emedial statutes are those that provide a remedy, or improve or facilitate remedies already existing, for the enforcement of rights or redress of injuries.").

Weighed against this standard, Idaho's Whistleblower statute is a remedial one. As a result, it must be " 'liberally construed to give effect to the intent of the Legislature.' " *Eastman v. Farmers Ins. Co.*, 164 Idaho 10, __, 423 P.3d 431, 435 (2018) (quoting *Hill*, 150 Idaho at 625, 249 P.3d at 818). Viewing the statute liberally, we hold that the Whistleblower Act provides such claimants with a remedy for all actual damages, based on all claims, including those otherwise available under common law tort claims. Such a result includes damages for emotional distress claims.

This result is buttressed by the approach we took in determining the meaning of the term "actual damages" as found in the Idaho Human Rights Act, Idaho Code sections 67-5901-12. *See O'Dell v. Basabe*, 119 Idaho 796, 811, 810 P.2d 1082, 1097 (1991). In considering this question, we held that "actual damages" includes both back pay and *front pay*, even though the statute explicitly listed only "back pay." We interpreted the statute liberally in noting that because the statute also directed that an injured party receive "actual damages," that party was entitled to seek both forms of damage. We supported this conclusion based on our view that (1) "lost wages are to be awarded as an element of 'actual damages,' which are commonly understood as those actual losses caused by the conduct at issue"; and (2) the term "lost wages" includes both forms of compensation without differentiation. *Id*. We have also recognized emotional distress damages as a form of *actual damages*. *See, e.g., Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 505, 95 P.3d 977, 987 (2004) (noting that a jury could award damages for mental distress when the plaintiff sought to recover actual damages). Thus, emotional distress damages are recoverable as a part of actual damage under the Whistleblower Act.

Given this conclusion, we clarify that Idaho Code section 6-2106 does not take away Eller's non-economic damages remedy as provided in section 6-2105. Section 6-2106 is an

independent and expanded list of remedies *a court may order* when violations of the Act are found to exist, but it is not a restriction on a claimant's ability to seek and receive redress for non-economic damages as part of "actual damages."

The list under Idaho Code section 6-2106 includes injunctive relief and specific performance, economic damages, costs, attorneys' fees, and civil fines. I.C. § 6-2106. This list expands the relief which a claimant may receive to include mainly equitable remedies that a court may order *independently* of a jury. The ISP would have this Court read the remedial statute narrowly, permitting a plaintiff to seek actual damages but then barring the court from allowing that remedy. Such a result is illogical. Indeed, "[i]n construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the [L]egislature, based on the whole act and every word therein, lending substance and meaning to the provisions." *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008). In reading both sections, the Whistleblower Act enables plaintiffs to seek actual damages under section 6-2105 while permitting the trial court an expanded list of equitable remedies under section 6-2106. These provisions do not conflict; they complement one another in their purpose of protecting governmental integrity and providing a statutory cause of action to public employees suffering adverse action for reporting waste and violations of a law, rule or regulation.

### 3. *Wright* incorrectly permitted a separate damages action within a whistleblower claim.

In *Wright v. Ada County*, this Court examined sections 6-2105 and 6-2106 together and determined that the Whistleblower Act did not preclude a plaintiff from bringing a negligent infliction of emotional distress claim. 160 Idaho 491, 501–02, 376 P.3d 58, 68–69 (2016). This Court explained, "[t]here is no limiting language that would indicate a plaintiff is precluded from bringing an independent cause of action for negligent infliction of emotional distress even though the alleged conduct would also constitute a violation of the Whistleblower Act." *Id.* at 501, 376 P.3d at 68. But the lack of limiting language within the Whistleblower Act does not resolve the inherent damages conflict that arises between the Whistleblower Act and the ITCA on claims like Eller's.

Given our holding today, the conflicting provisions between the ITCA and the Whistleblower Act require that we revisit this question. To resolve the conflict we look no further than this Court's pronouncement in *Van v. Portneuf Medical Center*, where the plaintiff

11

alleged both a Whistleblower Act claim and common law breach of contract claim, arguing both resulted from the adverse action taken by his public employer. 147 Idaho at 561, 212 P.3d at 991. In *Van*, the plaintiff brought a breach of contract claim for his termination, as well as a Whistleblower Act claim. *Id.* This Court held that when the Idaho Legislature enacted the Whistleblower Act, "the resulting statutory cause of action displaced the common law cause of action" by authorizing specific statutory remedies to meet the public policy concern. *Id.* We extend this holding to rule similarly here. Because the Whistleblower Act provides a direct remedy for non-economic damages, its statutory cause of action supplants the common law tort for negligent infliction of emotional distress. "To hold otherwise would allow plaintiffs to recover twice for the same underlying facts." *Id.*

Thus, a whistleblowing plaintiff may only seek the relief afforded under the Whistleblower Act. He has no claim under the ITCA for torts that also arise out of adverse actions under the Act. As a result, we overrule this portion of the *Wright* decision, recognizing that "[w]e will ordinarily not overrule one of our prior opinions unless it is shown to have been manifestly wrong, or the holding in the case has proven over time to be unwise or unjust." *Jackson Hop, LLC v. Farm Bureau Mut. Ins. Co. of Idaho*, 158 Idaho 894, 897, 354 P.3d 456, 459 (2015) (internal citations omitted). The *Wright* Court did not face the issue presented here and it was not argued to the Court in the same way as it was in this case. Because we hold that the Whistleblower Act precludes such a plaintiff from pursuing common law claims, we determine that *Wright*'s holding that a litigant may maintain a claim for emotional distress damages was manifestly wrong and we overrule that portion of the decision.

We acknowledge the reality that our ruling today will require swift action from whistleblower plaintiffs—they must act promptly, within the 180-day period afforded by the Whistleblower Act to present a timely claim. And yet this is not unusual, given that the ITCA also requires a claimant seeking general tort damages against the State to file a notice of the claim "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later," I.C. § 6-906. The need for prompt action when dealing with claims against governmental entities is not new and the parties on both sides of this equation will ultimately benefit from clarity moving forward.

This brings us to the conclusion that error occurred here and that a partial new trial[2] will be required to determine Eller's non-economic damages for his claims regarding negligent infliction of emotional distress solely under the Whistleblower Act. Eller's damages will be limited to those claims arising within the 180-day window before January 6, 2015, when his complaint was originally filed. I.C. § 6-2105(2). Even though Eller will make his claim under the Whistleblower Act, the elements of his emotional distress claim remain the same as they would be under the common law tort cause of action for the same conduct and the jury should be instructed accordingly.

**B. The district court did not err in determining Eller engaged in protected activity under the Whistleblower Act through (1) the Sloan investigation, and (2) objections to the ISP's new draft peer review policy.**

In its August 2, 2017, Memorandum Decision and Order on Motions for Summary Judgment, the district court determined that Eller participated in protected activities by testifying in the Sloan investigation preliminary hearing and in voicing objections to the new ISP draft peer review policy. The ISP argues that this was an error—Eller had limited involvement in the Sloan investigation, his participation was simply routine job performance, and his objections to the new ISP draft peer review policy were speculative and unproven. Eller contends that both actions were protected activities. We agree with the district court's ruling that both of Eller's actions constituted protected activities under the Whistleblower Act.

The Whistleblower Act protects governmental integrity by providing a legal cause of action to public employees who experience adverse actions by the employer as a result of reporting waste or violations of a law, rule or regulation. *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 395, 224 P.3d 458, 462 (2008). An employee's cause of action under the Whistleblower Act is defined in Idaho Code section 6-2105(4):

> To prevail in an action brought under the authority of this section, the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6-2104, Idaho Code.

Idaho Code section 6-2104 describes protected activities, which provides in pertinent part:

> (1)(a) An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates

---

[2] Eller's award for economic damages is supported by substantial evidence and was based on the Whistleblower Act itself. Thus, those damages are not disturbed by this ruling.

13

in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.

. . .

 (2)(a) An employer may not take adverse action against an employee because an employee in good faith participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review.

I.C. § 6-2104(1)(a), (2)(a). "Adverse action" is defined as "to discharge, threaten or otherwise discriminate against an employee in any manner that affects the employee's employment, including compensation, terms, conditions, location, rights, immunities, promotions or privileges." I.C. § 6-2103(1).

In determining whether Eller engaged in protected activity under the Whistleblower Act, we will address Eller's actions in (1) testifying at the Sloan investigation preliminary hearing, and (2) objecting to the new ISP draft peer review policy.

### 1. The Sloan Investigation

Idaho Code section 6-2104(2)(a) prohibits an employer from taking adverse action against an employee "because an employee in good faith participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review." This Court has interpreted both "participate" and "investigation" broadly under the statute. *Wright v. Ada Cnty.*, 160 Idaho at 497, 376 P.3d at 64; *Curlee*, 148 Idaho at 400, 224 P.3d at 467.

For example, in *Wright v. Ada County*, this Court held that a plaintiff could participate in an investigation "in more ways than just conducting the investigation. So long as an individual took part in the investigation or played an active role in it, that individual 'participated' in the investigation for purposes of the Whistleblower Act." 160 Idaho at 497, 376 P.3d at 64. Thus, Wright actively participated in the investigation by hiring an investigator, providing information to the investigator, and conducting meetings with the human resources representative. *Id.* Moreover, Wright's participation remained a protected activity even though the official investigation was "part of his responsibilities." *Id.* at 499, 376 P.3d at 66. This interpretation from *Wright* suggests that a plaintiff participates "in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review" by taking an active part in

14

the proceeding, even if he is not the primary investigator or inquisitor. *See id.*; I.C. § 6-2104(2)(a).

As evidenced in the record, Eller took part in the Sloan investigation by helping Klitch interview Sloan as well as testifying in the April 13, 2012, preliminary hearing. This was an active role. Eller directly questioned Sloan through an official ISP investigation into the crash, and later provided information as a prosecutorial witness against Sloan. Because Eller took part in the investigation and gave information in the preliminary hearing, he participated in a protected activity under the Whistleblower Act. As in *Wright*, even if Eller's actions fall under the broad umbrella of "routine job performance," as the ISP claims, his actions were sufficient in the investigation and preliminary hearing to constitute protected activity. Fulfilling his professional responsibilities does not alter that conclusion. *See* 160 Idaho at 499, 376 P.3d at 66.

### 2.   Objections to the ISP's new draft peer review policy.

Idaho Code section 6-2104(2)(a) prohibits an employer from taking adverse action against an employee "because the employee, . . . communicates in good faith the existence of any . . . violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States."

Communications are "a verbal or written report," and are made "in good faith if there is a reasonable basis in fact for the participation or the provision of the information." I.C. §§ 6-2103(2), 6-2104(2)(b). In addition, "[a] rule or regulation of a public administrative body ordinarily has the same force and effect of law and is an integral part of the statute under which it is made just as though it were prescribed in terms therein." *Mallonee v. State*, 139 Idaho 615, 619, 84 P.3d 551, 555 (2004). Internal administrative policies are differentiated from laws, rules, and regulations; a policy violation does not fall within the protective scope of the Whistleblower Act. *Id.* at 619–20, 84 P.3d at 555-56.

The ISP has two main contentions on this issue: first, that Eller has yet to prove an actual legal violation, and so his voiced concerns of a potential violation do not qualify as a protected activity; and second, that Eller was only doing his job and did not have objectively reasonable grounds to believe there was, or could be, a legal violation.

First, the ISP's argument conflates the communications clause with the violations clause under Idaho Code section 6-2104(2)(a), both of which have received different interpretations by this Court. While communications over waste and violations are both protected activities, each

15

statutory clause is subject to divergent language and application. For example, in *Van*, the plaintiff reported two suspected violations that implicated federal regulations. 147 Idaho at 559, 212 P.3d at 989. Even though the incidents were investigated and resolved, Van's conduct in reporting the suspected violations still constituted a protected activity. *Id.* This Court explained that an employer's actions or inactions following a report of violations—actual or suspected—do not affect the communication's protected-activity status. *Id.* Thus, actual violations are not required; a good faith communication of an actual or suspected violation of law, rule, or regulation is sufficient. *See id.* In contrast, Van's communications of "*potential* future waste, rather than past or present waste" that *may* occur at some future point did not qualify as protected activities. *Id.* The distinction between the two clauses is the "*existence* of any waste" and "a violation *or suspected* violation." I.C. § 6-2104(1)(a) (emphasis added). In either case the waste or violation must have occurred and not be left to future speculation.

Second, the ISP cites *Black v. Idaho State Police* to argue that Eller's suspicions were not objectively reasonable, and that he was simply doing his job. In *Black*, the ISP ordered Black to investigate financing difficulties and balance the budget for the Peace Officer Standards and Training Council (POST), of which he was the Executive Director. 155 Idaho 570, 571–72, 314 P.3d 625, 626–27 (2013). Black refused, stating he was under POST's command, not the ISP's. *Id.* Despite POST's unanimous directive for Black to work with the ISP Director on those fiscal matters, Black remained uncooperative. *Id.* Following his termination, Black alleged he communicated suspected violations of the law when he discussed POST's fiscal situation with the ISP and that the ISP Director violated a statute because the ISP's directives clashed with POST's. *Id.* at 574–75. Even so, this Court held that Black's activities were not protected by the Whistleblower Act because the officer was simply being asked "to do his job," not to violate the law or engage in any illicit activities. *Id.* The Court also noted that the officer's suspicions of potential legal violations by following the ISP's directives were not objectively reasonable—he had no ground to believe that he was not subject to the fiscal and administrative control of the ISP. *Id.* at 575.

Pursuant to the Court's analysis in *Van*, the fact that Eller did not prove a legal violation does not, in itself, make his activity unprotected under the Whistleblower Act. Nor does the ISP's response—or lack of one here—affect whether the communication was protected. Instead,

16

the main query rests on whether Eller's objections communicated "a violation or suspected violation," rather than just opposition to an internal administrative policy. I.C. § 6-2104(1)(a).

Ultimately, Eller argues that he objected to the new ISP draft peer review policy because it could have led to the destruction of exculpatory evidence and potential *Brady*[3] violations. In the *Brady* case, the Court held the suppression of evidence favorable to a defendant by the prosecution violates the Fourteenth Amendment's Due Process Clause where the evidence is material to the accused's guilt or punishment. 373 U.S. at 87. *Brady* remains binding authority and is a crucial interpretation of a criminal defendant's due process rights under the Fourteenth Amendment of the U.S. Constitution. Thus, when Eller objected to the new draft review policy, he was concerned that the policy could create *Brady* violations and thus impair a defendant's constitutional rights. While he objected to an internal policy, his ultimate concern was a constitutional violation. Such a "violation or suspected violation" of federal law falls under Idaho Code section 6-2104(2)(a).

Furthermore, unlike in *Black*, these concerns were objectively reasonable, especially considering the record before the Court. The commanding officers in the Sloan investigation were concerned that Carmack's draft reports omitted exculpatory evidence, and requested that the blood alcohol level be added to the final report. Without the peer review process and draft reports, such exculpatory evidence could have been missed. *Black* dealt with an uncooperative ISP employee who refused to follow a directive to investigate fiscal concerns, while Eller raised his policy objections and was then instructed by commanding officers to just "do his job." The cases are not comparable: Eller did not object to the administrative control of the ISP. Rather, he opposed a policy he reasonably believed could infringe on a defendant's constitutional rights and impact both civil and criminal cases involving crash reconstructionist reports.

**C. The ISP failed to preserve its right to appeal Jury Instruction No. 17 by not making a timely objection below.**

The ISP contends that the trial court erred in instructing the jury, as a matter of law, that plaintiff's communications were made in good faith. Even so, the ISP failed to preserve this issue for appeal.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Typically, whether a plaintiff makes the communication in good faith is a question of fact. *Black v. Idaho State Police*, 155 Idaho 570, 573, 314 P.3d 625, 628 (2013). In this case, Jury Instruction number 17 stated

> that Mr. Eller engaged in protected activity as defined by the Idaho Protection of Public Employees Act: (1) due to his involvement in the Sloan crash investigation and his preliminary hearing testimony; and (2) his communications in good faith of a suspected Violation of a law, rule, or regulation regarding his opinion on the Idaho State Police's policy regarding the destruction of peer review and draft reports. Therefore, you should treat the first proposition of this claim as having been proven.

The ISP did not object to this jury instruction until this appeal, nor did the ISP provide a record of any objection.

Idaho Rule of Civil Procedure 51(i)(3) states, "No party may assign as error the giving of or failure to give an instruction unless the party objects before the jury deliberates, stating distinctly the instruction to which that party objects and the grounds of the objection." The rule requires that a party timely object to the jury instruction—before the jury retires to consider its verdict—lest it fail to preserve the issue for appeal. *Safaris Unlimited, LLC*, 163 Idaho at 884, 421 P.3d at 215. This Court will not consider challenges to a jury instruction when the party failed to object to it below. *Id.* The district court's conclusions as set forth in the instruction have been sustained by this Court and are now the law of the case in any event.

**D. The district court did not err in allowing personal and lay testimony of physical manifestations of emotional distress.**

The ISP contends that the trial court erred in allowing Eller to testify about physical manifestations of emotional distress without qualified medical testimony, while Eller argues that the district court correctly denied these objections at trial. The district court determined:

> [T]he Court is going to allow the defendant to testify, including as to headaches. I don't really find a big distinction as between headaches and other physical manifestations. I think that's within the layperson's knowledge. I think we all know when we suffer from headaches. Whether or not it was or was not included in any medical report or that he saw a doctor regarding the alleged headaches is subject to cross-examination.

Because the admission of lay witness opinion testimony is within the discretion of the trial court, this issue requires the Court to apply an abuse of discretion standard. *Cook v. Skyline Corp.*, 135 Idaho 26, 35, 13 P.3d 857, 866 (2000). In determining whether "a trial court abused

its discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 195. While not specifically articulated, the ISP seems to argue that the district court erred in applying the law correctly. We disagree.

Idaho Rule of Evidence 701 permits lay testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Thus, this Court has held that some physical manifestations of distress—such as lost sleep, irritability, anxiety, and being "shaky-voiced"— were manifestations that a lay person could testify he had experienced. *Cook*, 135 Idaho at 35, 13 P.3d at 866. It is ultimately within the trial court's discretion to determine which physical manifestations are medical conditions for which expert testimony is needed to establish causation. *Id.*

Eller specifically testified that he felt sick, lost weight, experienced headaches and "skin issues," had trouble sleeping, could not eat, and felt stressed. The ISP recognizes that most of these symptoms fall into the common symptom category *Cook* permits lay testimony on, but argues that Eller's testimony on his headaches required professional expertise.

In *Cook*, this Court identified headaches and ulcers as examples of physical manifestations that could be classified as medical conditions that would require expert testimony. 135 Idaho at 35, 13 P.3d at 866. The *Cook* court, however, did not expressly mandate that headaches uniformly required this level of medical expertise. *Id.* That determination remained subject to the trial court's discretion. *Id.* In other cases we have held that lay testimony is sufficient to support recovery for headaches. For example, in *Carrillo v. Boise Tire Company, Inc.*, the plaintiff's testimony of medical symptoms included her headaches and nightmares, and was sufficient to support recovery for negligent infliction of emotional distress. 152 Idaho 741, 750, 274 P.3d 1256, 1265 (2012). Likewise, in *Sorensen v. Saint Alphonsus Regional Medical Center*, the plaintiff "was not required to put on medical testimony to support her emotional distress claim where she was able to testify that she suffered from headaches, gastric problems, insomnia and panic attacks." 141 Idaho 754, 758, 118 P.3d 86, 90 (2005).

19

These cases stress the wide discretion district courts have in determining what evidence of physical manifestations of emotional distress are permitted through lay testimony.

Ultimately, the district court had the discretion to choose whether Eller's symptoms—including headaches and "skin issues"—required expert testimony or were manifestations that a lay person could testify that he had experienced. In exercising this discretion, the district court reasonably concluded that Eller's symptoms were common physical ailments that a lay person could recognize and was not based on scientific, technical, or other specialized knowledge. The district court thus correctly applied the law when it determined Eller's testimony of physical manifestations were permissible under Rule 701. There was no abuse of discretion.

**E. The district court did not unfairly prejudice ISP by allowing testimony and written evidence from Carmack and Rice.**

The ISP argues that the trial court unfairly prejudiced the ISP by allowing testimony and written evidence at trial on matters unrelated to Eller, while limiting cross-examination on those issues. More specifically, the ISP objected to the extensive questioning of Carmack and Rice at trial on their OPS investigations following the Sloan investigation, arguing it was prejudicial and irrelevant evidence. Eller responds that the district court did not abuse its discretion in this regard because it was relevant evidence.

Both the decision to admit relevant evidence, and to balance its probative value against its prejudicial effect are decisions within the trial court's sound discretion. *Perception Const. Mgmt., Inc. v. Bell*, 151 Idaho 250, 253, 254 P.3d 1246, 1249 (2011); *State v. Carlson*, 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct. App. 2000). Even so, "[a] district court's improper exclusion of evidence will be overturned on appeal if it affects a party's substantial right." *Bell*, 151 Idaho at 253, 254 P.3d at 1249.

Thus, to determine whether "a trial court abused its discretion, this Court considers the four-part test cited previously from *Lunneborg*, 163 Idaho at 863, 421 P.3d at 195. While not specifically articulated, the ISP seems to contend the district court acted inconsistently with the applicable legal standards by permitting irrelevant, prejudicial evidence into the trial.

As a result, the ISP raises two contentions: the district court erred because (1) the evidence admitted was not relevant, and (2) it was unfairly prejudicial. Because the ISP timely objected to the evidence at the district court, it preserved this issue for appeal. *Carlson*, 134 Idaho at 398, 3 P.3d at 76. We disagree with both contentions.

**1. The district court did not err because the evidence was relevant.**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." I.R.E. 401.

The ISP timely objected on relevance grounds during the questioning of Carmack and Rice, as well as other witnesses who testified about the ISP's policies. The objections concerned the relevance of Rice's and Carmack's OPS investigation, administrative leave, and return to the ISP, as well as Rice's retirement from the ISP. The district court generally overruled these objections because the questioning and witnesses showcased circumstantial evidence that could establish a pattern of retaliatory conduct. The information gleaned from questioning Carmack and Rice, though not always directly related back to Eller, helped the jury understand the full dynamics of the Sloan investigation and the adverse actions taken against the officers following the preliminary hearing. Because Eller's case required that he establish the ISP's retaliatory motive and a pattern of retaliatory conduct, the ISP's conduct towards Carmack and Rice—officers directly connected to Eller in the Sloan investigation—was relevant to proving a pattern. These facts had the tendency to make retaliation against Eller more probable than it would have been without the evidence. I.R.E. 401.

2. **The district court did not err in determining the evidence was more probative than unfairly prejudicial.**

Even where evidence is relevant, Idaho Rule of Evidence 403 provides a balancing test where a judge measures the probative against the prejudicial value of evidence:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

I.R.E. 403. That said, "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case." *Carlson*, 134 Idaho at 397, 3 P.3d at 75. The concern is whether the evidence gives undue weight, causes illegitimate persuasion, or results in inequity. *Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987).

The evidence from Carmack and Rice was prejudicial to the ISP. It established the appearance of, if not the basis for, retaliatory conduct against third parties not involved in Eller's case, creating the potential to confuse the issues and mislead the jury. Even so, the district court

was correct in its determination that the evidence was relevant and probative, and that it was not unfairly prejudicial. Eller, Carmack, and Rice were all involved in the Sloan investigation and preliminary hearing, as well as meetings with the ISP's commanding officers over the same draft crash report. While each officer had independent interactions with the ISP, the parties' overall conduct was connected through the Sloan investigations and the ISP's adverse actions which created a pattern of retaliatory conduct against the officers. Thus, while the evidence was somewhat prejudicial to ISP, it was also highly probative in showing retaliatory conduct against Eller because of his participation in the Sloan preliminary hearing.

Both the questions of relevancy and probativeness versus prejudice were within the district court's discretion. The district court applied the correct legal standards to reach a reasonable conclusion on the admissibility of this evidence. The district court therefore did not abuse its discretion on this matter.

### F. Neither party is entitled to attorneys' fees on appeal.

The Whistleblower Act states that a court "in rendering a judgment brought under this chapter, may order . . . [t]he payment by the employer of reasonable costs and attorneys' fees." I.C. § 6-2106(5). "A court may also order that reasonable attorneys' fees and court costs be awarded to an employer if the court determines that an action brought by an employee under this chapter is without basis in law or in fact." I.C. § 6-2107. Both parties brought appeals with legitimate questions for the Court to address, grounding their arguments in fact and law. Neither party is the prevailing party here. As a result, we decline to award attorneys' fees.

## IV.    CONCLUSION

Given the foregoing, we vacate the district court's ruling capping Eller's damages under the ITCA, affirm the evidentiary holdings and finding that Eller participated in protected activities, and remand for a partial new trial to determine Eller's non-economic damages solely under the Whistleblower Act. We decline to award attorneys' fees and costs.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, **CONCUR**.